UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LESA DALTON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV01090 AGF |
| | ) | |
| PAINTERS DISTRICT COUNCIL NO. 2, | ) | |
| and JOSEPH BARRETT, | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Lesa Dalton's motion to disqualify Defendants' counsel, Bartley Goffstein, L.L.C., and on various other pre-trial motions. An evidentiary hearing on the motion to disqualify counsel was held on October 14, 2010. Upon review of the testimony and the entire record, and having had the opportunity to observe the demeanor of the witnesses, the Court shall grant the motion to disqualify counsel for the reasons set forth below.

## BACKGROUND

### Third Amended Complaint

Plaintiff commenced this action on June 17, 2010. In her third amended complaint filed on September 14, 2010, she alleges that she was a female journeyman painter who, prior to April 18, 2009, had been employed by various contractors who had collective bargaining agreements with Defendant Painters District Council No. 2 ("District Council"

or "Union").  She alleges that at various times during this period, Defendant Joseph Barrett, who was a fellow union member and an officer of the District Council,[1] made obscene sexual comments to her and sexually propositioned her, and that on April 15, 2009, in an open District Council meeting, Plaintiff complained by letter that she had been sexually harassed by Barrett.  Plaintiff further alleges that on about April 18, 2009, Defendants began advising contractors with whom the District Council had collective bargaining agreements not to hire Plaintiff, and that since that time, she has not been able to find employment as a painter.  She alleges that on September 29, 2009, the Trial Board of the District Council found Dalton guilty of making slanderous allegations of sexual harassment against Barrett (and fined Plaintiff $5,000), a decision that was reversed on April 26, 2010, by the General Executive Board of the international union.

Plaintiff claims that both Defendants violated Title VII of the Civil Rights Act of 1964 (Count I) and the Missouri Human Rights Act (Count II) by (1) sexually harassing her, (2) preventing her from working because she complained of the sexual harassment, (3) discriminating against her because she is a woman, and (4) retaliating against her for filing charges with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights and for airing her complaints against Barrett at the April 15, 2009 meeting.  She also claims that both Defendants violated their duty of fair

---

[1] There is some dispute as to Barrett's precise position with the Union during the relevant time period.  It is undisputed that in June 2009, he was elected as the Union's Business Manager.

representation, under section 301 of the Taft-Hartley Act (29 U.S.C. § 185) (Count III).

**Evidentiary Hearing**

Plaintiff testified at the hearing on the motion to disqualify Defendants' counsel that in 2009, prior to the April 20, 2009 District Council meeting, she told Kevin Kenny, who was then the Business Manager of the District Counsel, about Barrett's sexual harassment and that Kenny advised her to speak to attorney Jeffrey Hartnett. Hartnett was an attorney at Bartley Goffstein, L.L.C., the firm that represented the District Council. Plaintiff further testified that on Kenny's advise, she called Hartnett and told him the details of the alleged sexual harassment by Barnett. She testified that Hartnett told her to file internal charges against Barrett with the Union and then to get back to him.

Plaintiff testified that after this conversation, she decided not to file internal charges at that time and called Hartnett back the same day. He was not available and another attorney at Bartley Goffstein, L.L.C., James Kimmey, called her back later in the day. Plaintiff testified that Kimmey asked her to describe everything she had told Hartnett, that she did so, that she told him she was not going to file internal charges at that time, and that he told her that when she decided how she wanted to proceed, she should call the firm and let them know. According to Plaintiff, neither Hartnett nor Kimmey told her that he could not represent her or recommended that she get another attorney to represent her.

On cross-examination, Plaintiff was questioned about an affidavit dated September 17, 2009, that she had provided to the National Labor Relations Board in connection with

3

a proceeding on the underlying issues in this case. In the affidavit, Plaintiff attested that upon Kenny's advice, she called an attorney at Bartley Goffstein, L.L.C., who told her to file internal charges. She attested, however, that she did not remember the attorney's name. Plaintiff responded that despite this representation in the affidavit, she now recalled with certainty that she spoke to two attorneys at the firm, and that their names were Hartnett and Kimmey. She continued that when Kimmey called her, he stated that he was familiar with the case and asked her to describe the alleged harassment briefly, which she did. According to Plaintiff, Kimmey then told her that the first step was to file internal charges and that she should call back after she had done that, and that the firm was there if she needed it.

Plaintiff testified further that when she called Hartnett back, and eventually spoke with Kimmey, she was looking for advice on whether she had made the right decision not to file internal charges at the time, but to wait until after the upcoming elections for Business Manager, set for the summer of 2009. She testified that she was afraid that Barnett would be elected and would "target" her if she filed charges against him before the election. Plaintiff testified that after her conversation with Kimmey, she never called Bartley Goffstein, L.L.C., again.

During Plaintiff's cross-examination, Defendants asserted that they were surprised by Plaintiff's testimony that she had spoken not just to Kimmey but to Hartnett also, as the record had previously suggested that she had claimed to have spoken to only one attorney at the firm. As Hartnett was not present at the hearing, Defendants asked that the hearing

4

be continued so that they could present Hartnett's testimony to rebut Plaintiff's testimony. Plaintiff stated on the stand that she had handwritten notes at home documenting the phone calls about which she had testified, and the Court asked Plaintiff to submit a copy of these notes to the Court later that day.

Plaintiff's cross-examination continued, during which she testified that when she spoke with Hartnett, he told her that he had already spoken to Kenny and knew that she was calling about sexual harassment issues, and asked her to describe a few incidents. She also testified that she learned that Hartnett worked for the firm that represented the Union after her conversation with him, but before Kimmey called her back. She stated that her conversation with Kimmey lasted only about five minutes.

At the hearing, Kimmey testified that he spoke with Plaintiff briefly in February 2009, and told her, in accordance with his general practice, that he could not get involved in problems between union members. He testified that when the firm represented a union, the firm never represented one member of the union in a dispute with another member. Kimmey further testified that Plaintiff did not tell him any details about the alleged harassment, nor did she indicate that she had already spoken with Hartnett. He admitted that Plaintiff told him she had an issue with another union member, and also admitted that he advised her that she could pursue internal charges if she had such a problem.

In accordance with Defendants' request, the Court continued the hearing to October 28, 2010, so that Hartnett could testify. Thereafter, counsel for Defendants notified the Court that they decided not to present Hartnett as a witness. The Court

5

directed counsel for both sides to confer and report to the Court on the need to hold a continuation of the hearing. It is undisputed that Plaintiff's counsel told Defendants' counsel that Plaintiff intended to submit an affidavit by Kenny. Both sides represented to the Court that they had agreed that a continuation of the hearing was not necessary if the parties were given the opportunity to supplement the record and to file post-hearing briefs. Accordingly, on October 27, 2010, the Court vacated the continuation of the hearing and gave the parties time to supplement the record and file post-hearing briefs.

**Post-Hearing Evidence**

Plaintiff submitted by email, a scanned copy of the handwritten notes mentioned above that the Court had requested. The copy consists of the word "Lawyer," a name that appears to be "Hartnett," and a phone number. On October 28, 2010, Plaintiff submitted Kenny's affidavit dated that day, attesting that during his term as Business Manager for the District Council, he was responsible for retaining Bartley Goffstein, L.L.C., and would speak to Hartnett and Kimmey multiple times a week. He attested that after Plaintiff told him that she had sexual harassment complaints against Barrett, he advised Hartnett about it and Hartnett told him to have Plaintiff call him. Kenny attested that he then advised Plaintiff to contact Hartnett to seek advice regarding the alleged sexual harassment by Barrett, and that at no time did any attorney at Bartley Goffstein, L.L.C., advise him that they could not give Plaintiff advice on the matter.

On October 29, 2010, Defendants submitted the affidavit of Hartnett dated that day, attesting that he did not have a conversation with Plaintiff as described in her

6

testimony, that he did not remember having any conversation with Plaintiff, and that if a member of the Union called about a problem with another member, he would advise the caller of a member's rights under the Union constitution and by-laws, which included the right to file charges against another member. Hartnett further attested that Bartley Goffstein, L.L.C., represented many unions, and, to the best of his knowledge, would not represent, and had never represented, one union member against another involving internal union charges.

Plaintiff moved to strike Hartnett's affidavit on the ground that Defendants, having represented that they decided not to present his live testimony, should not now be permitted to submit his affidavit, thereby unfairly shielding him from cross-examination. While the Court finds somewhat disconcerting Defendants representing that they did not want to present Hartnett as a witness at a hearing, and then submitting his affidavit, the Court concludes that Hartnett's affidavit is properly before the Court in light of the fact that Plaintiff herself submitted a post-hearing affidavit of a non-testifying witness. Accordingly, the Court will afford both affidavits their due evidentiary value.

Defendants do not object to Kenny's affidavit in principle, but do object to the admission of the portions of this affidavit that describe Kenny's conversation with Hartnett. Defendants argue that as this conversation took place while Kenny was Business Manager for the District Counsel, the communication was between the District Council and its attorney, and therefore, privileged. Plaintiff has not responded to this argument. The Court will sustain the objections to Kenny's affidavit, because the Court concludes

that in any event, Plaintiff is entitled to disqualify Bartley Goffstein, L.L.C., from representing Defendants in this lawsuit.

## **DISCUSSION**

Two sources of authority are relevant in determining whether to disqualify Defendants' counsel. First, counsel is bound by the Missouri Rules of Professional Conduct.[2] Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law. *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1383 (10th Cir. 1994) (citation omitted); *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992) (citing cases from other circuits).

The Eighth Circuit has explained that "[b]ecause of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict scrutiny." *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (quoting another source). Nevertheless, although a party seeking disqualification carries a "heavy burden," "doubts should be resolved in favor of disqualification." *Commonwealth Land Title Ins. Co. v. St. Johns Bank & Trust Co.*, No. 4:08-CV-1433 CAS, 2009 WL 3069101, at *4 (E.D. Mo. Sept. 22, 2009) (quoting another source).

> [D]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. A disqualification of counsel, while protecting the

---

[2] This Court's Local Rule 12.02 adopts as this District's Rules of Professional Conduct the Rules of Professional Conduct adopted by the Missouri Supreme Court.

> attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing. Disqualification often results in increased expenses, delay in resolution of the proceedings, and always deprives a party of its choice of counsel.

*Id.*

Plaintiff asserts that disqualification is warranted here due to the conflict of interest rule governing duties to former clients set forth at Missouri Rule of Professional Conduct 4-1.9(a), which provides, as follows: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." This rule is identical to the ABA Model Rule of Professional Conduct 1.9. Thus, the Missouri rule reflects the national standard.

"Important policies behind [Rule 4-1.9] include the promotion of fundamental fairness . . . by prohibiting an attorney from using an informational advantage gained in the course of a former representation, the desire to promote client disclosure of all pertinent information . . ., and the desire to promote confidence in the integrity of the judicial system." *Polish Roman Catholic St. Stanislaus Parish v. Hettenbach*, 303 S.W.3d 591, 600 (Mo. Ct. App. 2010) (quoting another source).

A party seeking disqualification must show that (1) an attorney-client relationship existed and (2) there is a substantial relationship between the subject matter of the present and former representations. *Gerstner v. Sebig, LLC*, 386 F. App'x 573, 574 (8th Cir.

2010) (quoting *United States v. LaVallee*, 439 F.3d 670, 681 (10th Cir. 2006)); *see also Griffen by Freeland v. E. Prairie, Mo. Reorganized Sch. Dist. No. 2*, 945 F. Supp. 1251, 1253 (E.D. Mo. 1996). "An attorney-client relationship can be established even though the attorney is not ultimately retained." *Griffen*, 945 F. Supp. at 1254 (citation omitted).

> An attorney-client relationship is established when a prospective client seeks and receives legal advice and assistance from an attorney who intends to provide legal advice and assistance to the prospective client. In determining whether the legal advice and assistance of an attorney is sought and received, courts look to the substantive nature of the contacts within the relationship, regardless of what formal or procedural incidents have occurred. Payment for legal services is not a prerequisite to the formation of an attorney-client relationship. Proper examination of the alleged attorney-client relationship between [the attorney] and [the alleged former client] requires exploration into the substantive nature of the contacts [the attorney] had with [the alleged former client], including the legal advice and assistance [the alleged former client] requested as well as whether [the attorney] provided the requested advice and assistance.

*Hettenbach*, 303 S.W.3d at 601 (citations omitted). "The relationship is established when the client believes that she is consulting a lawyer in his professional capacity and manifests her intention to seek legal advice." *Griffen*, 945 F. Supp. at 1245 (citation omitted).

Here, the Court credits Plaintiff's testimony that she spoke to both Hartnett and Kimmey on the day in question, and that she told them, at least generally, about her alleged sexual harassment by Barrett, as set forth in her third amended complaint. The Court further credits her testimony that they each told her that she could (or even should) file an internal grievance, and did not tell her that she should contact another attorney to represent her. The Court also credits the not-inconsistent testimony by Kimmey that he

told Plaintiff, in accordance with his general practice, that as his law firm represented the Union, the firm could not get involved in disputes between union members. The Court also credits Hartnett's attestations regarding his similar general practice when a union member called about a dispute with another member.

Based on these findings, the Court concludes that Plaintiff was seeking legal advice when she called Hartnett and spoke to Kimmey, and that she reasonably believed that Hartnett or Kimmey gave her legal advice. Similarly, the Court believes that Plaintiff has met the second prong of the disqualification inquiry. In determining whether a substantial relationship between a former and current representation exists, "'[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.'" *Cole*, 43 F.3d at 1384 (quoting *Model Rules of Prof'l Conduct R. 1.9 cmt.*). Put another way, "[t]he inquiry is whether it is 'reasonable to infer' that confidential information would have been given to the lawyer during the prior representation and, if so, whether that information is 'relevant' to issues raised in the current litigation." *Commonwealth Land Title Ins. Co.*, 2009 WL 3069101, at \*6 (quoting *In re Carey*, 89 S.W.3d 477, 494 (Mo. 2002)). Here, Plaintiff's phone conversations with Hartnett and Kimmey involved them in the issues in the present case.

While the question is a close one, in such a situation, as noted above, any doubt is to be resolved in favor of disqualification.

# CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to strike the affidavit of Jeffrey Hartnett is **DENIED**. [Doc. #58]

**IT IS FURTHER ORDERED** that Plaintiff's motion to disqualify Defendants' counsel is **GRANTED**. [Doc. #29]

**IT IS FURTHER ORDERED** that Plaintiff's motion to file a fourth amended complaint is **GRANTED**. [Doc. #52]

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss the third amended complaint is **DENIED as moot** without prejudice to Defendants' right to file such a motion, by incorporation or otherwise, directed to the fourth amended complaint. [Doc. #33]

**IT IS FURTHER ORDERED** that Defendants' motion to stay discovery pending ruling on the motion to dismiss the third amended complaint is **DENIED as moot**. [Doc. #35]

**IT IS FURTHER ORDERED** that Defendants shall have 30 days to have new counsel enter an appearance on their behalf, and 21 days from the date of such entry to file

an answer or otherwise respond to Plaintiff's fourth amended complaint. A new Case Management Order will be entered at that point.

~~~
                                    _____
                                    AUDREY G. FLEISSIG
                                    UNITED STATES DISTRICT JUDGE
~~~

Dated this 8th day of April, 2011.