UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LESA DALTON, | ) |
|     Plaintiff, | ) |
| vs. | ) Case No. 4:10CV01090 AGF |
| PAINTERS DISTRICT COUNCIL NO. 2, and JOSEPH M. BARRETT, | ) |
|     Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' joint motion (Doc. No. 70) to dismiss Plaintiff Lesa Dalton's fourth amended complaint for lack of subject matter jurisdiction and for failure to state a claim. For the reasons set forth below, the motion shall be granted in part and denied in part.

## BACKGROUND

Plaintiff commenced this action on July 17, 2010. In her fourth amended complaint she alleges that she was a female journeyman painter who, prior to April 18, 2009, had been continually employed by various contractors that had collective bargaining agreements with Defendant Painters District Council No. 2 ("District Council"). She alleges that at various times during this period, Defendant Joseph Barrett, who at various times was the Business Manager and/or Secretary-Treasurer of the District Council, made lewd sexual comments to her and sexually propositioned her, and that on April 15, 2009, in an open District Council meeting, Plaintiff complained about this conduct, and a letter she had

1

written detailing the objectionable conduct was read at the meeting. It is undisputed that in June 2009, Barrett was elected as Business Manager of the District Council, a position he had previously held from 2002 to sometime in 2007.

Plaintiff further alleges that starting on about April 18, 2009, Defendants began advising contractors, with whom the District Council had collective bargaining agreements, not to hire Plaintiff and that since that time, she has not been able to find employment as a painter. She alleges that in about July 2009, without her knowledge, the District Council struck her name from the list from which union members were referred to contractors for work.

On August 10, 2009, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR") against the District Council. In the "Discrimination Based On" section of the charge, Plaintiff checked only the "Retaliation" box. She did not check the "Sex" box. She indicated that the discrimination began on April 18, 2009, and in the "Particulars" section of the charge, stated as follows:

> On April 15, 2009 during a union meeting, a letter written by me was read by the Treasurer to the Union body, in which I accused Joe Barrett, Business Manager, of sexual harassment. As a direct and proximate result of my letter/complaint, I was laid off on or about April 18, 2009. Moreover from the time of my layoff, Painters District Council #2 has continuously interfered with my ability to gain employment from other employers.
>
> I believe I have been discriminated against due to retaliation in violation of Title VII.

(Doc. No. 73-1.)

2

On September 29, 2009, the Trial Board of the District Council found Plaintiff guilty of making slanderous allegations of sexual harassment against Barrett and fined her $5,000, a decision that was reversed on April 26, 2010, by the General Executive Board of the international union. On May 28, 2010, the EEOC issued a Right to Sue letter, and on June 15, 2010, the MCHR issued a Right to Sue letter.

This action was initiated on June 17, 2010. In her fourth amended complaint, Plaintiff claims that both Defendants discriminated against her in violation of Title VII of the Civil Rights Act of 1964 (Count I) and the Missouri Human Rights Act ("MHRA") (Count II) by Barrett's sexually aggressive conduct, by allowing an environment in which such conduct was accepted, by using her sexual harassment complaint as a justification to fine and punish her and prevent her from working, by discriminating against her because she is a woman, and by retaliating against her for filing the administrative charge and for airing her complaints against Barrett at the April 15, 2009 meeting.

In Count III, Plaintiff claims that both defendants violated the duty of fair representation by the September 29, 2009 decision to fine her and by continuing "to the present day" to advise contractors not to her hire. And in Count IV, Plaintiff claims that Defendants violated the Labor Management Reporting Disclosure Act ("LMRDA"), 19 U.S.C. §§ 411-415, by retaliating against her for exercising her free speech rights. In each count, Plaintiff seeks back pay, front pay, costs, and attorney's fees, for a total of $250,000,

plus punitive damages.[1]

For dismissal, Defendants argue that (1) the sexual harassment and gender discrimination claims in Counts I and II fail because they were not included in the administrative charge, which was limited to a claim of retaliation as a result of having her letter read at the April 15, 2009 union meeting; (2) Plaintiff's retaliation claims under Title VII and the MHRA fail because the letter was not protected activity as it did not allege a violation of those statutes, but was rather "merely a debate during an election cycle"; (3) the Title VII and MHRA claims fail as to Barrett for his conduct when he was not a union officer but just a fellow union member, and also for his conduct when he was a union officer because there is no individual liability under Title VII and no individual liability for union officers under the MHRA, and further, Plaintiff did not charge Barrett with discrimination or retaliation in the administrative charge; (4) the applicable six-month statute of limitations

---

[1] Plaintiff's initial and first amended complaint asserted only Title VII and MHRA claims against Defendants. (Doc. No. 1 & Doc. No. 16.) The second amended complaint, filed on August 30, 2010, added Count III for breach of the duty of fair representation. (Doc. No. 30.) The fourth amended complaint added the LMRDA claim. (Doc. No. 97.)

The record now before the Court includes a letter dated November 16, 2009, from Defendants' former counsel, to the National Labor Relations Board in connection with the dispute underlying this lawsuit. The letter states that as of April 2009, the only position held by Barrett was as "Trustee for Local Union No. 1199," that Plaintiff was a member of a different local, and that at that time, Barrett was not an official of the District Council, had no authority over that entity, nor any ability to impact Plaintiff's employment. (Doc. No. 44-2.) The letter states further that in April 2009, Barrett was a candidate for Business Manager "and running against the then current Union Administration, which included [Plaintiff's] live-in boyfriend . . . a Business Agent with the District Council." *Id.* Because the matter is before the Court on a motion to dismiss, this letter will not be relied upon by the Court in reaching its conclusions.

4

bars the fair representation claim; (5) Barrett, as an individual, cannot be liable for breach of the duty of fair representation; and last, (6) Plaintiff's LMRDA claim fails because her speech -- namely, the letter read at the April 15, 2009 union meeting -- was "entirely personal" and did not relate to the union's democratic governance, and was thus not protected by the LMRDA.

Plaintiff responds that (1) the administrative charge, which mentions Barrett by name, is broad enough to encompass all of her Title VII and MHRA claims against both Defendants; (2) Barrett is subject to individual liability for the alleged Title VII and MHRA discrimination and retaliation claims because he was an officer or Trustee of the union at all relevant times; (3) Barrett can be held individually liable under the MHRA, Mo. Rev. Stat. § 213.070 (1), which provides that "[it] shall be an unlawful discriminatory practice . . . [t]o aid, abet, incite, compel, or coerce the commission of acts prohibited under this chapter or to attempt to do so . . . . " and by case law which recognizes individual liability under the MHRA; (4) the six-month statute of limitations for the fair representation claim with respect to the September 29, 2009 fine did not begin to run until April 26, 2010, when Plaintiff had exhausted her union remedies, and that the fair representation claim with respect to interference with her ability is a continuing violation and thus not time-barred; (5) Barrett "ceded jurisdiction" to a fair representation claim by the suggestion in Defendants' memorandum in support of their motion to dismiss Plaintiff's first amended complaint that the allegation of retaliation in the form of interference with work more properly constituted a fair representation claim; and (6) that the letter read at the April 15, 2009 meeting was

5

protected speech under the LMRDA.

## DISCUSSION

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  To survive a 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but the allegations must nonetheless "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff need only allege facts that permit the reasonable inference that the defendant is liable, even if the complaint "strikes a savvy judge that actual proof of the facts alleged is improbable" and recovery "very remote and unlikely." *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010) (quoting another source). Plaintiff's Title VII and MHRA claims generally are subject to the same analysis, *see, e.g., Weger v. City of Ladue*, 500 F.3d 710, 717 n.4 (8th Cir. 2007), and will be discussed using Title VII jurisprudence only, except where differences between the two statutes are relevant.

**Retaliation Claim Under Title VII and the MHRA**

Title VII prohibits a labor organization from retaliating against a member who has opposed any practice Title VII makes unlawful.  42 U.S.C. § 2000e-3(a).  A prima facie case of retaliation requires a plaintiff to prove that (1) she engaged in protected activity, (2) the union took adverse action against her, and (3) the adverse action was causally linked to the protected activity.  *See Martin v. Local 1513*, 859 F.2d 581, 585 (8th Cir. 1988).  The Eighth Circuit has recognized that protected activity is not limited to the filing of a formal charge of harassment.  Internal complaints or informal complaints to superiors are also

6

protected activity under Title VII. A plaintiff "need not establish the conduct which . . . she opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying conduct violated the law." *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006) (quoted source omitted). Reporting instances of sexual harassment by co-workers is "the very essence of protected activity under Title VII," even if the alleged harassment did not rise to the level of a violation of the Act. *Id.*; *see also Gunn v. Langston*, No. 3:10–cv–35–DPM, 2011 WL 3667759, at *4 (E.D. Ark. Aug. 22, 2011); *Strom v. Holiday Companies*, 789 F. Supp. 2d 1060, 1087 (N.D. Iowa 2011).

To the extent Plaintiff refers to the same continuing retaliatory conduct which occurred subsequent to her filing of the EEOC charge, the Court determines such conduct to be sufficiently like or related to the alleged retaliatory conduct asserted in the charge such that the claim may be considered exhausted. *See Shockley v. City of St. Louis*, No. 4:10CV638 FRB, 2011 WL 4369394, at *5 (E.D. Mo. Sept. 19, 2011).

The Court concludes, however, that Barrett cannot be held liable under Title VII for the alleged retaliation. The Eighth Circuit has repeatedly stated that there is no individual liability on the part of an employee's supervisor or co-worker under Title VII, *see, e.g., Schoffstall v. Henderson*, 223 F.3d 818, 821 n.2 (8th Cir. 2000), a principle this Court believes holds equally true with respect to a union official or co-member. *See Mathis v. CWA Local Union 4320*, No. 2:10–cv–1093, 2011 WL 3497189, at *6 (S.D. Ohio Aug. 9, 2011).

7

Missouri courts, on the other hand, recognize supervisor liability under the MHRA.  *See Hill v. Ford Motor Co.,* 277 S.W.3d 659, 669 (Mo. 2009).  Thus Plaintiff might have a cognizable MHRA retaliation claim against Barrett depending upon such matters as his union status at the times relevant to Plaintiff's claim, his involvement and knowledge of the EEOC investigation, and other facts of the case.  Because these matters cannot be determined on the basis of the pleadings, the motion to dismiss cannot be granted as to Plaintiff's MHRA retaliation claim against Barrett.

**Harassment and Discrimination Claims under Title VII and the MHRA**

Exhaustion of administrative remedies is required before an individual can bring a cause of action, under Title VII or the MHRA.  To satisfy this requirement, the individual must give notice of all claims of discrimination she wished to assert in court, in an administrative complaint.  *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630-31 (8th Cir. 2000) (citations and quoted sources omitted).

> To determine whether an allegedly discriminatory action falls within the scope of a claim, the administrative complaint must be construed liberally in order to further the remedial purposes of applicable legislation, i.e., to prohibit unlawful employment practices, and a plaintiff  may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.  The breadth of the civil suit is, therefore, as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination.

*Id.* at 631 (citations and quoted sources omitted).

Here, as noted above, Plaintiff named only the District Council as the party that discriminated against her, and only checked the box "Retaliation," on the administrative

8

charge, leaving the box labeled "Sex" empty. Plaintiff also provided the particulars of the alleged retaliation, ending with the statement that she believed she was unlawfully retaliated against. Furthermore, she identified the earliest date that the charged discrimination took place as April 18, 2009. The Court concludes that her claim under Title VII is therefore limited to a retaliation claim. *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222-23 (8th Cir. 1994) (stating under similar facts that the plaintiff's "claims of race discrimination are separate and distinct from her claims of retaliation"); *Shockley,* 2011 WL 4369394, at *4; *cf. Brooks v. Midwest Heart Group*, 655 F.3d 796, 801 (8th Cir. 2011) (holding that the district court correctly granted the defendant's motion to dismiss age and retaliation claims where the plaintiff only checked the boxes for "Race" and "Sex" and the boxes for "Age" and "Retaliation" remained unchecked).

As discussed above, a claim under Title VII lies only against the District Council; a claim under the MHRA lies against the District Council and possibly against Barrett as well.

**<u>Breach of Duty of Fair Representation Claim</u>**

"[A] labor organization has a statutory duty of fair representation under the National Labor Relations Act . . . to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 73 (1989). The statute of limitations for bringing a fair representation claim is six months from the time the employee knew or reasonably should have known of

9

the alleged breach.  *Scott v. United Auto.*, 242 F.3d 837, 838 (8th Cir. 2001).

> Put another way, a cause of action ordinarily accrues when the plaintiff could first have successfully maintained a suit based on that cause of action.  A reasoned analysis of the question of when a duty of fair representation claim accrues must necessarily focus on the context in which the claim arose.

*Skyberg v. United Food & Commercial Workers Int'l Union, AFL-CIO*, 5 F.3d 297, 301 (8th Cir. 1993) (quoted sources omitted).

As noted above, Plaintiff bases her claim in Count III, which was added to the complaint on August 30, 2010, on (1) the September 29, 2009 decision by the Trial Board of the District Council to fine her, and (2) the alleged interference with her ability to find work.  With respect to the former, the Court does not see how Plaintiff can state a fair representation claim based upon the fine imposed by the District Council on September 29, 2009, because that decision was overturned by the international union.  *Cf. Pygatt v. Painters' Local No. 277, Int'l Bhd. of Painters & Allied Trades*, 763 F. Supp. 1301, 1308-09 (D.N.J. 1991) (holding that the union members' claim under that LMRDA that the local union violated their rights by imposing fines without a full and fair hearing "evaporated" as the international union dismissed the fines).

With respect to the claim that Defendants breached and continue to breach the duty of fair representation by interfering with her ability to find work, the Court agrees with Plaintiff that this asserts the kind of continuing violation that might, upon development of the record, toll the statute of limitations.  *See Lewis v. Local Union No.* 100, 750 F.2d 1368, 1379 (7th Cir. 1984) (applying continuing violation doctrine to duty of fair representation

10

claim). Barrett, however, cannot be liable on such a claim, as individual officers, agents, or members of a labor organization are immune from liability on a claim for breach of the duty of fair representation. *See, e.g., Johnson v. Laundry Workers LCL 141 & Agents*, 419 F. App'x 146, 148 (3d Cir. 2011); *Morris v. Local 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d Cir. 1999). Plaintiff's argument that Barrett somehow "ceded jurisdiction" to this claim is nonsensical.

**LMRDA Claim**

The Court concludes that Plaintiff's LMRDA claim against the District Council is not subject to dismissal on the ground asserted by Defendants. Section § 101 of the LMRDA provides that "[e]very member of any labor organization shall have the right to . . . express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting . . . ." 29 U.S.C. § 411(a)(2). Section 102(a)(2), in turn, provides a private right of action for violations of § 101(a)(2).

The speech protected under § 101 is not as broad as the speech protected by the First Amendment. *Hylla v. Transp. Commc'ns Int'l Union*, 536 F.3d 911, 917 (8th Cir. 2008). Section 101 "was founded on Congress' desire to protect the democratic governance of unions. Because a union's democratic governance will not be undermined by speech that is entirely personal, it is appropriate that no cause of action would arise for such expression." *Id.* Instead, the "threshold inquiry in the LMRDA context is whether the speech at issue may be fairly characterized as a matter of *union* concern." *Id.* Section

101(a)(2) "is limited to speech that relates to the general interests of the union membership at large." *Id.* No cause of action arises under § 101(a)(2) for "speech that is of an entirely personal interest." *Id.* at 917-18. To determine whether speech is protected under § 101(a)(2), courts look to the "content, form, and context" of the activity. *Id.* at 918. The question of whether speech is protected under the LMRDA is a question of law. *Id.* at 919 n.4.

On this record, the Court cannot conclude that announcing at a union meeting that a candidate for union office was allegedly engaging in sexual harassment of a union member could not fairly be characterized as a matter of union concern, and thus, protected speech under the LMRDA.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss the fourth amended complaint is **GRANTED in part and DENIED in part** consistent with the above decision. (Doc. No. 70)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 10th day of November, 2011.